UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **CELESTE STOUT,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 4:19-CV-1559-RDP |
| **ANDREW SAUL, Commissioner of the Social Security Administration,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Celeste Stout ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

On May 9, 2016, Plaintiff filed applications for DIB and SSI, alleging a period of disability beginning on December 28, 2014. (Tr. 182-83, 279-87, 331). Plaintiff later amended her alleged onset date of disability to June 22, 2015. (Tr. 174, 300). On September 16, 2016, the Social Security Administration denied Plaintiff's applications. (Tr. 182-83, 206-07). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was granted. (Tr. 218-19). On June 4, 2018, ALJ Renee Hagler, along with a vocational expert ("VE") JoAnn Hayward, held an oral hearing from Birmingham, Alabama, with Plaintiff and her counsel appearing via

video teleconference from Gadsden, Alabama. (Tr. 158-81). On September 24, 2018, the ALJ denied Plaintiff's applications. (Tr. 41-56). The ALJ determined that Plaintiff was not disabled as defined by the Act from her alleged onset date of disability, June 22, 2015, through the date of the decision. (*Id*.). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4), making the ALJ's decision the final decision of the Commissioner and ripe for judicial review under 42 U.S.C. §§ 405(g) and 1383(c).

At the time of the ALJ hearing, Plaintiff was thirty-eight years old and had completed some years of college. (Tr. 163). Plaintiff has previous work experience as a fast food worker, a residential caregiver, and as a cashier. (Tr. 164-65, 178, 337). According to Plaintiff, she has been disabled since June 22, 2015 because she suffers from patellofemoral syndrome, allergies, and sinusitis. (Tr. 324). Plaintiff further alleges she suffers from diabetes, stomach complications, inner rectal issues, depression, and obesity. (Tr. 166-70). Plaintiff claims that she needs assistance with cooking, bathing, running personal errands, and cleaning on a daily basis, but she can drive to places such as the grocery store, the pharmacy, and to doctor's appointments. (Tr. 170-74). Plaintiff alleges that she cannot move around without using a cane, and that she continually sleeps during daytime hours. (Tr. 171-72, 174).

On August 19, 2010, Plaintiff visited the Quality of Life Health Complex complaining of diarrhea, acid reflux, and abdominal pain. (Tr. 639-42). Plaintiff visited Quality of Life again on August 31, 2010, still complaining of abdominal pain despite having been prescribed medication for that issue during the previous visit. (Tr. 642-63). Plaintiff was diagnosed with dysmenorrhea and uterus leiomyoma and she was given medication to treat these conditions. (Tr. 643). Soon thereafter, on September 12, 2010, Plaintiff appeared at Gadsden Regional Medical Center citing abdominal pain, which she ranked at a 10/10 on the pain scale. (Tr. 913). Plaintiff was diagnosed

with fibroids in her uterus during her hospital stay, and upon discharge rated her pain level at a 2/10. (Tr. 913, 919).

On June 26, 2013, Plaintiff first began complaining of rectal bleeding during a visit to Riverview Regional Medical Center, but she was not prescribed medication. (Tr. 1362). Plaintiff continued to complain of rectal and abdominal pain, and on May 27, 2014, medical professionals at UAB performed an endometrial biopsy. (Tr. 1047-76). Plaintiff's symptoms persisted, and she was diagnosed with hemorrhoids on December 18, 2015. (Tr. 783-87). On July 21, 2016, Dr. Ken Davenport performed a sphincterotomy in an attempt to alleviate Plaintiff's pain, after which she experienced "three months of pain free bowel movements." (Tr. 1077, 79). Approximately one year later, Dr. Davenport performed a second sphincterotomy on May 1, 2017, after Plaintiff began suffering from numerous anal fissures. (Tr. 440, 1079-80). During the ALJ hearing on June 4, 2018, Plaintiff stated that she still was experiencing anal bleeding, pain, and diarrhea, despite undergoing two sphincterotomies. (Tr. 168-69). According to Plaintiff, Dr. Davenport reported that there was nothing further they could do to alleviate her symptoms. (Tr. 168-69).

Between September and November 2018, Plaintiff reported to Gadsden Regional Medical Center, as well as Akins Medical Clinic, complaining of abdominal pain. Upon examination, it was found that she suffered from a left-ovarian cyst, which was removed by a laproscopic exam with left salpingo-oophorectomy. (Tr. 92-99). Upon completion of this procedure, Plaintiff showed "no evidence of bowel obstruction of excessive colonic stool burden." (Tr. 71-136, 137-57).

Additionally, Plaintiff claims that her allergies and sinuses have been an issue since 2010. (Tr. 626). On March 22, 2011, Plaintiff was diagnosed with allergic rhinitis and chronic maxillary sinusitis after three previous visits to Quality of Life for allergy symptoms. (Tr. 669). Additionally, on September 20, 2012, Quality of Life reported that Plaintiff's symptoms were improving with

antibiotics, antihistamines, and decongestants, although Plaintiff complained that her sinusitis continued to persist. (Tr. 712). On January 10, 2014, Plaintiff's prognosis was advanced to acute sinusitis. (Tr. 772). Plaintiff currently complains that she still suffers from sinusitis and that she must use an inhaler one to two times a day. (Tr. 170).

Plaintiff was also diagnosed by Quality of Life with chronic obesity on June 22, 2016. (Tr. 704-07). Plaintiff has reported that her chronic obesity has led to chest pain and shallow breathing. (Tr. 541). On March 24, 2017, Plaintiff was diagnosed with Type 2 diabetes mellitus with hyperglycemia by Dr. Jane Teschner at the Mercy Medical Clinic. (Tr. 1485). In her testimony before the ALJ, Plaintiff stated that her chronic obesity led to her diabetes diagnosis, for which she takes Metformin, and she claims that the medication causes her to have frequent bowel movements. (Tr. 165, 169, 542). Plaintiff additionally suffers from abdominal pain caused by ovarian cysts brought on by her obesity and diabetes. (Tr. 122-136).

Plaintiff also claims to have suffered from knee complications during her alleged period of disability. (Tr. 166, 194). On April 21, 2016, Plaintiff reported to Quality of Life that she had pain in her left knee that had been ongoing for six weeks. (Tr. 798-801). She was referred to Dr. Daniel R. Sparks, of Sparks Orthopedic & Sports, who diagnosed her with patellofemoral syndrome on May 3, 2016. (Tr. 441, 798-801, 834). Plaintiff began regularly seeing Dr. Adam Shaw at Northeast Orthopedic Clinic, P.C. for physical therapy beginning in December 2016. (Tr. 1082-1236). After a combination of physical therapy, rest, oral anti-inflammatories, and activity medication failed to cure the problem, Plaintiff underwent a left knee lateral release and patellar chondroplasty at Gadsden Regional Medical Center on February 23, 2017. (Tr. 854-975, 1439). On March 8, 2017, Dr. Shaw opined that Plaintiff would fail to report for work on fourteen days out of a thirty-day period. (Tr. 853). He further stated that he did not expect Plaintiff's knee complications to last

more than twelve months. (*Id.*). After her surgery, Plaintiff continued to undergo physical therapy at Riverview Regional Medical Center to increase her range of motion and to strengthen her legs. (Tr. 1082-1236, 1446). When Plaintiff began this course of physical therapy, her pain was listed as a 7/10. (Tr. 1100). However, she estimated her pain had decreased to a 4/10 by her last recorded session. (Tr. 1219). Plaintiff's physical therapist, Dr. Megan Bryant, noted that during the sessions Plaintiff showed an increase in range of movement, strength, and mobility, as well as a decrease in pain. (Tr. 1236). Concurring with Dr. Bryant's assessment, Dr. Shaw stated that following her surgery and physical therapy Plaintiff "[felt] as though her pain and strength are improving." (Tr. 1459). However, on January 23, 2019, Plaintiff saw Dr. Shaw again reporting a resurgence of pain in her left knee, even though Plaintiff had a "full range of motion of the knee." (Tr. 25).

  Finally, Plaintiff alleges that she suffers from depression and anxiety, leading her to have an antisocial lifestyle and frequent panic attacks. (Tr. 170). Plaintiff was prescribed Prozac by Dr. Lawrence Ware at Quality of Life on December 21, 2016. (Tr. 1038). However, on March 3, 2017, Plaintiff requested an increase in her Prozac dosage from Dr. Jane Teschner at Mercy Medical Clinic. (Tr. 1480). Dr. Teschner granted the request, assessing Plaintiff's depression as moderate to severe. (*Id.*). On June 23, 2017, Plaintiff admitted herself to Gadsden Regional Medical Center for depression and suicidal thoughts. (Tr. 1492-1527). Dr. Adam Pruett diagnosed Plaintiff with moderate major depression and panic disorder, increased her Prozac dosage, and prescribed her anxiety medication. (Tr. 1522). Dr. Pruett reported that "much of [Plaintiff's] presentation appeared to be secondary to cocaine abuse," and that "[Plaintiff] gradually brightened during her stay and on [June 26,] was denying any suicidal ideation and felt she could manage her symptoms on an outpatient basis." (Tr. 1524). However, Dr. Teschner reported on July 28, 2017 that Plaintiff consumed alcohol infrequently and had no substance abuse issues. (Tr. 1476).

On September 6, 2017, Dr. Teschner opined that, due to her depression, Plaintiff would be off task 75% of the time in an eight hour day, miss eight days of work within a thirty-day period, and need to lie down, sleep, or sit with her legs propped at waist level or above for four hours in an eight-hour period. (Tr. 1479). Plaintiff continued to receive treatment for her depression from Dr. Huma Khusro at CED Mental Health Center. (Tr. 66-69, 526). On May 31, 2018, Plaintiff reported to Dr. Khusro that her Prozac was not helping and that she was always in pain, but Dr. Khusro noted that Plaintiff no longer had suicidal ideation. (Tr. 66-69).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

Even if the claimant cannot be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her

impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged amended onset date of disability, June 22, 2015, and that she suffers from the following severe impairments that significantly limit her ability to perform basic work activities: diabetes, obesity, anxiety, depression, and right and left knee arthroscopy. (Tr. 47). However, the ALJ concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 48). After consideration of the entire record, the ALJ determined that Plaintiff retains the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following limitations: she can climb ladders, ropes, or scaffolds occasionally, stoop occasionally, and can crouch occasionally; can never work at unprotected heights or with moving mechanical parts, and can only be exposed to extreme heat or cold occasionally; and is restricted to simple, routine tasks involving simple work-related decisions and occasional contact with the general public. (Tr. 50). Following the testimony of the VE, the ALJ determined that Plaintiff was precluded from

performing her past relevant work as a fast food worker, home health aide, and cashier. (Tr. 54). However, the ALJ further concluded that Plaintiff was not disabled as defined by the Act because Plaintiff's age, education, work experience, and residual functional capacity would have allowed her to perform jobs existing in significant numbers in the national economy at the date last insured. (*Id.*). The ALJ also concluded that Plaintiff had not been under a disability at any time between June 22, 2015 and the date of the ALJ's decision, September 24, 2018. (Tr. 55-56).

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff presents three arguments for reversing the decision of the ALJ. First, Plaintiff contends that the ALJ failed to accord proper weight to the opinions of two of her treating physicians: Dr. Teschner and Dr. Shaw. Specifically, Plaintiff contends that the ALJ failed to show good cause for not giving the physicians' opinions substantial weight. Second, Plaintiff argues that the ALJ failed to adequately consider her subjective testimony as to the side effects of her medication, including drowsiness, fatigue, and diarrhea. And third, Plaintiff alleges that the ALJ's decision as a whole was not based on substantial evidence because the ALJ failed to give proper weight to two of her treating physicians, Dr. Teschner and Dr. Shaw, and relied on VE testimony that was "not based on a correct or full statement of [her] limitations and impairments."

### IV.   Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

**V.     Discussion**

    **A.     The ALJ Properly Weighed the Medical Source Opinions in Assessing Plaintiff's RFC**

Plaintiff's first argument is that the ALJ failed to accord proper weight to the testimony of two treating physicians: Dr. Teschner and Dr. Shaw. Specifically, Plaintiff claims that the ALJ failed to show good cause for not giving the opinions of Dr. Teschner and Dr. Shaw prevailing weight. This argument is unpersuasive for at least two reasons: (1) the RFC determination is the province of the ALJ alone; and (2) the ALJ's reasons for discounting the two physician's opinions are supported by substantial evidence.

It is emphatically the duty of the ALJ to make a claimant's RFC determination at step four of the disability analysis. 20 C.F.R. § 404.1546; *Moore v. Soc. Sec. Admin., Comm'r*, 649 F.App'x 941, 945 (11th Cir. 2016). This court has long recognized that the RFC determination is well within the scope of the ALJ's authority as it requires consideration of not only the relevant medical evidence but also the evidence contained in the record as a whole. *Smith v. Saul*, 413 F. Supp. 3d 1140, 1144 (N.D. Ala. 2019). Forcing the ALJ to accept the conclusions of a medical expert would essentially require the Commissioner to abdicate the statutory responsibility to decide whether the claimant is disabled and entitled to benefits. *See* SSR 96-5p, 1996 WL 374183 (July 2, 1996).

9

Thus, the ALJ is not required to take the opinions and recommendations of medical experts at face value.

The Eleventh Circuit requires an ALJ to give the medical opinions of a treating physician "substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A claimant's treating physician is defined as:

> [an] acceptable medical source who provides . . . or has provided . . . medical treatment or evaluation [to a claimant] and who has, or has had, an ongoing treatment relationship with [a claimant]. Generally, we will consider that [a claimant] ha[s] an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [a claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [a claimant's] medical condition(s). 20 C.F.R. § 416.927(c)(2).

Conversely, the opinion of a physician who examines the claimant on only one occasion is generally not entitled to great weight. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). An ALJ is not required to give a treating physician's testimony substantial or considerable weight if: (1) it is not supported by other evidence in the record; (2) the evidentiary record supports a contrary finding; or (3) the treating physician's opinion is either conclusory or inconsistent with their own treatment records. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

Here, the ALJ concluded that Dr. Teschner's opinions appear to be "based more on [Plaintiff's] allegations and less on her actual history of treatment." (Tr. 54). For example, Dr. Teschner's conclusion that Plaintiff would be off task seventy-five percent of the time in an eight hour day, miss eight days of work within a thirty-day period, and need to be lying down, sleeping, or sitting with her legs propped at waist level or above for four hours in an eight-hour period, was inconsistent with not only the record evidence as a whole, but also with her own treatment notes,

in which she frequently states that Plaintiff is "alert and oriented," has an appropriate mood and affect, in no apparent distress or no abnormality detected. (Tr. 54, 1483-90). Additionally, Dr. Teschner's opinion that Plaintiff only infrequently consumed alcohol and had no substance abuse issues is in direct conflict with the circumstances surrounding Plaintiff's hospitalization at Gadsden Regional Medical Center in 2017 partially related to cocaine abuse. (*Id.*, 1492-1527). Similarly, the ALJ found that Dr. Shaw's opinions about Plaintiff's limitations conflicted with a majority of the record medical evidence. (Tr. 54). For example, Dr. Shaw's statement that Plaintiff would fail to report to work fourteen days out of every thirty-day period due to her physical limitations is incompatible with Dr. Bryant's notes that physical therapy allowed Plaintiff an increase in a range of movement, strength, and mobility, and a decrease in pain. (Tr. 853, 1236, 1459).

It is clear that the ALJ's analysis properly evaluated the treating physicians' opinions as necessary under 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The court thus concludes that the ALJ's decision to afford the opinions of Dr. Teschner and Dr. Shaw less weight is supported by substantial evidence.

### B.   The ALJ Adequately Considered Plaintiff's Testimony Concerning the Side Effects of Her Medications

Plaintiff's second argument is that the ALJ did not adequately consider her testimony concerning the side effects of her medications. However, this claim is without merit because the ALJ determined that Plaintiff's testimony regarding the symptoms stemming from her medications was not consistent with the medical evidence contained in the record as a whole. (Tr. 51).

When evaluating the credibility of Plaintiff's subjective statements regarding their own limitations, the ALJ must consider the side effects of any medication(s). *See* 20 C.F.R. § 1529(c). In the Eleventh Circuit, while the ALJ must consider any subjective complaints regarding a

medication's side effects, the claimant has the duty to "introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010). If there is insufficient evidence that a claimant is taking medication that causes side effects, the ALJ is not required to elicit testimony or make findings regarding any medications and their potential side effects. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011).

In this case, the ALJ opined that "although [Plaintiff's] alleged substantial side effects arising from her medications, she never persistently complained of any such problems to her doctors and they did not report any such problems." (Tr. 53). Plaintiff's testimony at the ALJ hearing (in which she indicated that her medication causes drowsiness, fatigue, dry mouth, and diarrhea) contrasts sharply with the fact that she never reported any serious, debilitating medication side effects to her doctors and that her doctors never noted the existence of such debilitating side effects. (Tr. 175). Plaintiff has failed to cite to any medical evidence showing that she complained to her doctors of any side effects of her medication(s) which would impact her ability to work.

Furthermore, the medical evidence itself does not show that Plaintiff suffers from any medication side effects that would warrant a finding of disability. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (affirming the determination that the claimant's side effects did not present a significant problem where the record did not disclose any concerns from the claimant's doctors about her side effects). In fact, the record provides substantial evidence to support the ALJ's finding that Plaintiff's subjective statements concerning the effects of her medications was not consistent with the record evidence. (Tr. 51). Even if the ALJ was required to make further considerations regarding Plaintiff's side effects from her medication, the medical evidence would not show that she has sufficient side effects that would warrant a finding of disability. Due to

Plaintiff's lack of supporting evidence, the court concludes that the ALJ adequately considered her testimony concerning the side effects of her medicine.

### C. The Testimony of the Vocational Expert Constitutes Substantial Evidence

Finally, Plaintiff contends that the ALJ's decision was not based on substantial evidence because the testimony of the vocational expert was based on an inaccurate and incomplete hypothetical. At the hearing on June 4, 2018, the ALJ's hypothetical to the vocational expert explicitly included the following limitations which she found to exist as part of the RFC determination:

> ALJ: I would like for you to consider a hypothetical individual of similar age, education and prior work history as the claimant. Assume such an individual can lift 50 pounds occasionally, 25 pounds frequently; can sit for 6 hours; stand for 6 hours; walk for 6 hours; push and pull as much as lift and carry. This hypothetical individual [c]an lift climb ladders, ropes, and scaffolding no more than occasionally. The individual could stoop occasionally and crawl – crouch occasionally. The individual can never work at unprotected heights; never work with moving mechanical parts; can be exposed to either extreme heat or extreme cold on an occasional basis. The individual, mentally, would be restricted to simple and routine tasks involving simple/work-related decisions and occasional contact with the general public. Given that hypothetical, would there be any positions available for such a hypothetical individual, first from the prior, and then from any other work?

(Tr. 174). The vocational expert answered that the individual would be precluded from all of Plaintiff's past employment but could work as a linen room attendant, dry-cleaner helper, or box wrapper. (Tr. 147-75). Based on this testimony, the ALJ determined that Plaintiff could find jobs that existed in the national economy in significant numbers during the period between Plaintiff's alleged onset date of disability and her date last insured. (Tr. 54). Plaintiff contends that the ALJ's hypothetical did not accurately state her pain level or her RFC because it assumed that she could perform medium work. However, upon careful review of the record, the court finds that the ALJ's

hypothetical appropriately accounted for the full battery of Plaintiff's limitations and medically determinable impairments.

An ALJ may use the testimony of a vocational expert to determine whether a claimant, based on her RFC, age, education, and past work experience, can perform other work in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). During the claimant's hearing, the vocational expert testifies by responding to hypotheticals asked by the ALJ. *Id.* at 1240. The Eleventh Circuit has long held that these hypotheticals need only to account for the claimant's impairments, rather than for all of the claimant's expressed symptoms. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). That is to say that the ALJ's hypothetical must either explicitly include the claimant's medically determinable impairments, or at the very least implicitly account for the limitations stemming from those impairments. *Winschel*, 631 F.3d at 1180-81.

The ALJ's hypothetical need not specifically reference all of Plaintiff's medically determinable impairments; rather, the question must include the limitations derived from those impairments. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F.App'x 538, 541-42 (11th Cir. 2017) (determining that ALJ's hypothetical question to vocational expert was not improper because it took into account all limitations found in the RFC, which was itself supported by substantial evidence). Here, the ALJ did not err by failing to include Plaintiff's pain (or the side effects of her medication) in the hypothetical posed to the vocational expert because she found (correctly) that Plaintiff's subjective complaints of her symptomology were not supported by substantial evidence in the record. *Crawford*, 363 F.3d at 1160-61. Therefore, the court concludes that the vocational expert's testimony was not based on an improper hypothetical, and that substantial evidence supports the ALJ's determination that Plaintiff was not disabled under the Act.

**VI.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 20, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE